# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| **WOLFGANG RUST, and BOBBY CONN,** | ) | **CASE NO. 4:08CV3185** |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **MEMORANDUM** |
| **v.** | ) | **AND ORDER** |
| | ) | |
| **NEBRASKA DEPARTMENT OF CORRECTIONAL SERVICES RELIGION STUDY COMMITTEE, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

This matter is before the court, following supplemental briefing, on two remaining issues from Defendants' Motion for Summary Judgment: whether Defendants' practice of scheduling a combined worship time for Theodish Belief and Asatru practitioners violates the Religious Land Use and Institutionalized Persons Act ("RLUIPA") and whether it violates the First Amendment. (Filing No. 46; Filing No. 47 at CM/ECF pp. 13-16, 23-24.) As set forth below, Defendants' Motion for Summary Judgment is denied with respect to these issues and this matter will proceed to trial on these issues only.

## I. BACKGROUND

On November 12, 2009, the court entered a Memorandum and Order granting summary judgment in favor of Defendants on all issues in this matter except Plaintiffs' RLUIPA and First Amendment claims relating to Defendants' practice of scheduling a combined worship time for Theodish Belief and Asatru practitioners.[1] (Filing No. 67 at CM/ECF pp. 24-31.) In that Memorandum and Order, the court concluded that the record before the court, including Defendants' evidence, established that Defendants' practice of

---

[1]Plaintiffs Wolfgang Rust and Bobby Conn are practitioners of Theodish Belief, which they identify as a "Teutonic" Heathen faith of Northern Europe. (Filing No. 59 at CM/ECF p. 11.)

scheduling a combined worship time for Theodish Belief and Asatru practitioners imposed a substantial burden on Plaintiffs' religious exercise. (*Id*. at CM/ECF pp. 25-28.) However, the court also concluded that the record was ambiguous as to whether the combined worship time was in furtherance of a compelling governmental interest and whether it was the least restrictive means available. (*Id*. at CM/ECF pp. 28-29.) On its own motion, the court granted the parties additional time to supplement the record with evidence to clarify these issues. (*Id*. at CM/ECF p. 29.) The court specifically asked the parties to address the following:

1. The number of Theodish practitioners at NSP.
2. The number of Asatru practitioners at NSP.
3. The number of Native American practitioners at NSP.
4. The number of Native Americans that the sweat lodge holds.
5. The costs associated with scheduling a separate worship time for Asatru and Theodish Belief practitioners.
6. The staff increase associated with scheduling a separate worship time for Asatru and Theodish Belief practitioners.
7. The safety and security issues associated with scheduling a separate worship time for Asatru and Theodish Belief practitioners.

(*Id*.)

On December 15, 2009, Defendants filed a Supplemental Brief in Support of their Motion for Summary Judgment and a Supplemental Index of Evidence. (Filing Nos. 68 and 69.) One month later, Plaintiffs filed a Supplemental Brief in Opposition to Defendants' Motion for Summary Judgment and a Supplemental Exhibit Index. (Filing Nos. 70 and 71.) This matter is deemed fully submitted.

## II. ANALYSIS

In their Supplemental Brief, Defendants argue that scheduling a combined worship time for Theodish Belief and Asatru practitioners is the least restrictive means of (1) providing departmental consistency regarding religious worship; and (2) ensuring the safety

and security of the institution in light of budget restrictions and staffing limitations.  (Filing No. 68 at CM/ECF pp. 11-16.)  The court will address these arguments in turn.

        *A.*    *Departmental Consistency Regarding Religious Worship*

To support their first argument, Defendants submitted an affidavit from the Administrative Assistant to the Deputy Director for Institutions at the Nebraska Department of Correctional Services ("DCS"), Joe Baldassano ("Baldassano").  (Filing No. 69-3, Attach. 3.)  According to Baldassano,  the DCS schedules only one worship time for Protestants (*e.g.*, Baptist, Lutheran, Pentecostal, etc.).  (Filing No. 46 at CM/ECF p. 2.)  Defendants argue that "[e]nsuring consistent religious worship time for all DCS inmates is a compelling state interest," and that providing a separate worship time for Theodish Belief practitioners, while requiring other sects, such as Protestants, to worship at the same time, would be inconsistent.  (Filing No. 68 at CM/ECF pp. 11-12.)  Although Defendants may have determined that Baptists and Lutherans are able to worship together, the evidence before the court at this time indicates that Theodish Belief and Asatru practitioners have significant doctrinal conflicts and cannot worship together.[2]

Defendants also assert that if they were required to provide Theodish Belief practitioners with a separate worship time they might be required to provide separate worship times for all religious sects.  (*Id*. at CM/ECF p. 12.)  This argument is speculative and does not satisfy RLUIPA's requirements.  *See Fowler v. Crawford*, 534 F.3d 931, 939 (8th Cir. 2008) (concluding that speculation, exaggerated fears and post-hoc

---

[2]Further, Defendants rely on their practice of grouping Protestants together to explain their actions in this case, but fail to explain why they provide separate worship times for Catholics, another Christian sect.  *See Marpaung v. Holder*, No. 09-9545, 2010 WL 925880, at *3 (10th Cir. March 16, 2010) (recognizing that Christianity includes both Catholicism and Protestantism).

rationalizations will not suffice to meet RLUIPA's requirements) (*citing* S. Rep. No. 103-111, at 10 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 2990 (Senate Report on RFRA)).[3] In short, Defendants have not shown that *consistent religious worship for all inmates* is a compelling interest, nor that scheduling a combined worship time for Theodish Belief and Asatru practitioners  is in furtherance of that interest.

B.     *Safety and Security in Light of Budget Restrictions and Staffing Limitations*

To support their second argument, Defendants submitted affidavits from DCS Deputy Director Francis Hopkins ("Hopkins") and Nebraska State Penitentiary ("NSP") Warden Dennis Bakewell ("Bakewell").  (Filing No. 69-1, Attach. 1; Filing No. 69-2, Attach. 2.)  According to Bakewell, the NSP "does not" currently assign a correctional officer to monitor the Theodish Belief and Asatru worship area while it is in use.  (Filing No. 69-2, Attach. 2 at CM/ECF p. 6.)  However, he states that a separate worship time "could" impact safety and security at NSP by "reducing staffs' ability to monitor other areas of the facility, delaying staffs' ability to complete other duties and reducing the number of staff who are available to report for other duties at the facility, including emergency situations." (*Id.* at CM/ECF p. 5.)

Although safety and security can be a compelling state interest under RLUIPA, *Cutter v. Wilkinson*, 544 U.S. 709, 717 (2005), RLUIPA requires Defendants to provide some evidence to show that safety and security problems *will* result from accommodating

---

[3]Moreover, the Eighth Circuit has rejected such an opening-of-the-floodgates argument.  *See, e.g., Love v. Reed*, 216 F.3d 682, 690 (8th Cir. 2000) (rejecting defendant's argument that accommodating plaintiff's religious dietary needs would open a floodgate of similar requests from other inmates); *see also Buchanan v. Burbury*, No. 3:05CV7120, 2006 WL 2010773, at *7 (N.D. Ohio July 17, 2006) (rejecting defendants' argument that granting plaintiff's request for kosher food would negatively impact the operation of the prison because it would open a floodgate for similar requests).

4

Plaintiffs' request. *Fegans v. Norris*, 537 F.3d 897, 909 (8th Cir. 2008). Defendants have failed to meet this standard because their evidence does not show how scheduling a separate worship time for Theodish Belief and Asatru practitioners *will* impact safety and security at NSP. In addition, Plaintiffs' unrefuted evidence shows that the Theodish-Belief and Asatru worship area is currently monitored only by a tower security guard and a security camera. (Fling No. 71 at CM/ECF p. 47.) In short, the record does not contain concrete information to establish that a separate worship time for Theodish Belief practitioners will require additional staff or impose additional costs. Moreover, Defendants have not shown, nor argued, that they considered any alternatives less restrictive than a combined worship time. *Fegans*, 537 F.3d at 910 ("Prison officials cannot justify restrictions on religious exercise by simply citing to the need to maintain order and security in a prison. They must demonstrate that they actually considered and rejected the efficacy of less restrictive measures before adopting the challenged practice." (citation and quotations omitted)).

In sum, a genuine issue of material fact remains as to whether Defendants' practice of scheduling a combined worship time for Theodish Belief and Asatru practitioners violates RLUIPA and the First Amendment.[4] Because Plaintiffs have already demonstrated that a combined worship time imposes a substantial burden on their religious exercise, the only issues remaining with respect to Plaintiffs' RLUIPA claims are whether Defendants' practice of scheduling a combined worship time is in furtherance of a compelling governmental interest and whether it is the least restrictive means available. Plaintiffs' First Amendment claim shall proceed in accordance with the factors in *Turner v. Safley*, 482

---

[4]Defendants make no additional arguments regarding the remaining First Amendment claims in their Supplemental Brief or Evidence.

U.S. 78 (1987).[5] Because the parties did not demand a jury (*see* Docket Sheet), this case shall proceed as a nonjury trial.

IT IS THEREFORE ORDERED that:

1.      Defendants' Motion for Summary Judgment (Filing No. 46) is denied with respect to Plaintiffs' RLUIPA and First Amendment claims relating to Defendants' practice of scheduling a combined worship time for Theodish Belief and Asatru practitioners; and

2.      A separate order will be entered progressing this matter to trial.

DATED this 9th day of April, 2010.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge

---

[5]The Eighth Circuit uses the *Turner* factors to analyze the reasonableness of government restrictions for First Amendment free-exercise claims. *Murphy v. Mo. Dep't of Corr.*, 372 F.3d 979, 983 (8th Cir. 2004) ("In analyzing [a First Amendment free-exercise claim], we consider first the threshold issue of whether the challenged governmental action infringes upon a sincerely held religious belief, and then apply the *Turner* factors to determine if the regulation restricting the religious practice is reasonably related to legitimate penological objectives." (citations and quotations omitted)).

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.